## Magee Laundry & Cleaners, Inc., *v.* Harwell Appliance Co., Inc.

(Division B. Jan. 16, 1939. Suggestion of Error Overruled Feb. 27, 1939.)

[185 So. 571. No. 33473.]

**Robertson & Robertson,** of Jackson, for appellant.

**Thos. S. Bratton,** of Jackson, for appellee.

Argued orally by **Stokes V. Robertson**, for appellant, and by **Thos. S. Bratton**, for appellee.

**McGehee, J.,** delivered the opinion of the court.

This case originated in the county court of Hinds County, where the appellee sued appellant on a note evidencing the balance on the purchase price of an air conditioning unit bought for the purpose of "air conditioning" the office of appellant. There was a plea of the general issue and, under notice of affirmative matter, a breach of implied warranty and a total failure of consideration was alleged; and there were offers to return the unit and forego reimbursement for the cash payment made thereon.

The county court, where the judge determined from the testimony all of the facts and the law without the intervention of a jury, rendered judgment in favor of the appellant. Thereupon, appellee appealed to the circuit court of said county, where the judgment of the county court was reversed and a judgment rendered in behalf of the appellee. From this judgment the appellant has prosecuted this appeal.

Appellee is engaged in selling appliances, including air conditioning units manufactured by the York Factory at York, Pennsylvania, and had in its employ a salesman who had received the equivalent of a three-years' college course in air conditioning and commercial refrigeration at the factory. This salesman assured the appellant that the unit in question would "air condition" its office. Appellant knew nothing of the size or type of unit that would serve the purpose desired, and relied solely upon the judgment and assurance of the salesman to the effect that the unit in question would serve the purpose intended. Mr. Harwell of the appellee Harwell Appliance Company testified that the salesman "knew how to figure the load," and it was shown that a suitable unit should have capacity to reduce the temperature from ten to twelve degrees on the inside as compared with that on the outside of a room or building. The county judge, as such

trier of the facts, found from the testimony that appellant was assured that this unit would properly "air condition" the office. No guarantee or warranty was made that it would reduce the temperature any particular number of degrees, but naturally the term "air condition" would be understood to mean that the office would be rendered reasonably comfortable to the extent usually experienced in "air conditioned" hotels, offices and other buildings.

The unit was installed on May 12, 1937, and the salesman testified that: "At that time of the year the weather was not exceptionally warm, and as summer came on the weather got exceptionally warmer." The unit functioned fairly well at first, and on June 4, 1937, the sale was concluded by appellant making a cash payment and executing the note sued on for the balance of the purchase price. As the weather became warmer it was ascertained that the unit was wholly inadequate to provide the proper temperature to render the office comfortable. It would only reduce the temperature from four to five degrees. This fact was not disputed and the salesman and appellee's mechanic and witness both conceded in their testimony that the unit was too small to serve the purpose for which it had been purchased. It is contended however by the appellee that when the negotiations began three different size units were shown, and that the salesman then recommended to the appellant that a larger unit be purchased. However the finding of the county court was to the effect that the particular unit in question was purchased on the assurance of the salesman that it would properly "air condition" the office, and that this assurance was given after a survey had been made of the office by the salesman. Under the familiar and well settled rule this finding of fact should not be disturbed on appeal unless manifestly erroneous. We are unable to say that such was the case.

After it was discovered that the unit did not serve the

purpose desired, the salesman and another representative of the appellee recommended that the office be insulated, at considerable expense to appellant, or that he purchase a larger unit. Appellant was unwilling to incur this additional expense, and it was then suggested that he place an electric fan in the office to aid the unit in producing the proper temperature. This method was tried, but due to the fact that the windows of the office were to be kept closed while the air conditioning unit was in operation it was found that the suggested remedy was likewise ineffective.

Appellee contends that these negotiations and experiments transpired prior to the execution of the note and final acceptance of the purchase, and that all objections were thereby waived. On the contrary, the appellant testified that this occurred some time after the execution of the note, and that thereafter he continually informed the appellee from time to time that he could not use the appliance and repeatedly offered to return it. The county court likewise found in favor of the appellant on this conflict in the testimony.

The circuit court was of the opinion that the consideration for the note would fail under the facts in this case only if there was a latent defect in the unit. Also, that where a purchaser relies upon the superior knowledge and judgment of the seller there is no warranty except as against latent defects. This view, in our opinion, is in conflict with the decision in the case of J. A. Fay & Egan Company v. Louis Cohn & Brothers, 158 Miss. 733, 130 So. 290. In that case the seller sold the purchaser a machine to be used in connection with a portable sawmill which was "too frail and light to render the service for which it was sold" and which the seller had represented that it would perform. The purchaser received the kind, size and type of machine that he purchased and the objection thereto was not on account of any latent defect. The purchaser had been assured that

it would serve the purpose for which the seller was informed he intended to use it, and the assurance proved to be untrue. Numerous authorities could be cited and reviewed on the question here involved, but we are of the opinion that the facts in the present case are such that the decision is fully controlled here by the case above referred to and the authorities therein cited. Reference is here made to the facts in that case, and to the principles of law therein announced, which are, in our opinion, clearly applicable to the issue here involved.

If the modern conveniences and appliances now constantly coming into use are to be purchased with any degree of safety and devoted to a profitable use, the public must of necessity rely upon the expert knowledge and assurance of the seller in many instances as to their suitability for the purpose intended. When such reliance is known to the seller the assurances and representations of fitness for a particular purpose should be made good, when they can be shown by competent evidence to have brought about the sale. Since the decision of the county court on the facts is supported by the testimony, the judgment of the circuit court must be reversed and the judgment of the county court affirmed and reinstated.

Reversed and judgment here for appellant.